UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JUDITH SCISM,

                Plaintiff
        -v-                                      1:19-CV-1543

ETHICON, INC.; and JOHNSON & JOHNSON,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| NAPOLI SHKOLNIK PLLC<br>Attorneys for Plaintiff<br>400 Broadhollow Road, Suite 305<br>Melville, New York 11747 | NICHOLAS R. FARNOLO, ESQ. |
| JOHNSON LAW GROUP<br>Attorneys for Plaintiff<br>2925 Richmond Avenue Suite 1700<br>Houston, Texas 77098 | DANA LIZIK, ESQ. |
| RIKER DANZIG SCHERER HYLAND<br>& PERRETTI LLP- NJ OFFICE<br>Attorneys for Defendants<br>One Speedwell Avenue<br>P.O. Box 1981<br>Morristown, New Jersey 07962 | KELLY S. CRAWFORD, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

I. **INTRODUCTION AND BACKGROUND**

In October of 2002, defendant Johnson & Johnson, a New Jersey corporation headquartered in the same state, and its wholly owned subsidiary, Ethicon, Inc. (together "defendants"), also a New Jersey corporation, began to market and sell Gynemesh. Dkt. 1

("Comp."), ¶¶ 2, 3, 12.[1]  Gynemesh, as its name suggests, is a prolene mesh product designed to treat medical conditions in a woman's pelvis, particularly pelvic organ prolapse and stress urinary incontinence.  *Id.* ¶ 13.

Several additional and similar mesh products followed:  (1) in September of 2005 defendants began to sell Prolift; (2) in May of 2008, defendants began to sell Prolift+M; and (3) at an unspecified point, defendants marketed TVT, which is a similar mesh product but unlike defendants' other offerings is designed only to treat urinary stress incontinence.  Comp. ¶¶ 14-16.  In marketing these varied mesh products, defendants present them to the medical community and its patients as a "safe, effective, reliable, medical device[.]"  *Id.* ¶ 23.  Defendants' marketing strategy is allegedly quite extensive and aggressive, involving exaggerated and misleading representations of the mesh products' safety and utility.  *Id.* ¶ 24.

According to plaintiff Judith Scism ("Scism" or "plaintiff"), these products in reality have a propensity to fail and cause injury, which defendants allegedly underreport and withhold from the public, physicians, and the Food and Drug Administration ("FDA").  Comp. ¶¶ 26-27, 32.  Moreover, plaintiff alleges that defendants failed to adequately test the mesh products prior to marketing them.  *Id.* ¶ 28.  Plaintiff alleges that these mesh products have "high failure, injury, and complication rates, fail[] to perform as intended, require[] frequent and often debilitating re-operations," and have caused a number of "severe and irreversible injuries" to many women.  *Id.* ¶ 25.  Despite these injuries, plaintiff alleges that feasible alternative designs exist and have existed to treat urinary stress incontinence or pelvic organ prolapse, but that defendants have not employed them.  *Id.* ¶ 30.

---

[1] The facts are taken entirely from plaintiff's complaint, because for the purposes of a Rule 12(b)(6) motion, this Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff[.]"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

On July 2, 2014, Scism was surgically implanted with TVT at Albany Medical Center in Albany, New York, to treat her urinary incontinence. Comp. ¶¶ 19-20. The mesh allegedly arrived in the hospital in the same, or at least substantially similar, condition in which defendants produced it. *Id.* ¶ 33.

On December 12, 2016, plaintiff needed a revisionary surgery to correct problems with her TVT mesh. Comp. ¶ 21. Plaintiff alleges that as a result of her TVT implant, she has suffered significant mental and physical pain and suffering, as well as permanent injury and deformity. *Id.* ¶ 22. In addition, plaintiff claims to have suffered economic injury, particularly due to medical expenses. *Id.* Moreover, plaintiff alleges that the pelvic mesh has led to severe complications for many women including infection, organ perforation, blood loss, nerve damage, and organ prolapse. *Id.* ¶ 34. However, plaintiff does not clarify which, if any, of these symptoms she herself suffered. *See generally id.*

On December 12, 2019, Scism filed a complaint in this district relying on diversity jurisdiction under 28 U.S.C. § 1332, because she is a New York citizen and defendants are New Jersey citizens. Comp. ¶¶ 1-3, 6. Plaintiff alleges eleven counts: (I) failure to warn; (II) strict liability; (III) negligence; (IV) negligent misrepresentation; (V) negligent infliction of emotional distress; (VI) breach of an express warranty; (VII) breach of an implied warranty; (VIII) breach of New York's consumer protection laws; (IX) gross negligence; (X) unjust enrichment; and (XI) punitive damages. On January 8, 2020, defendants moved to dismiss counts II-VIII and X of the complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. 10. No motion was made against counts I or IX. *Id.* Defendants' motion having been fully briefed, it will now be considered on the basis of the parties' submissions without oral argument.

**II.     LEGAL STANDARD**

## A. RULE 12(b)(6).

"To survive a Rule 12(b)(6) motion to dismiss, the [complaint's] '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is to say, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540.

## B. CHOICE OF LAW.

A district court hearing state common law claims is bound to apply the choice-of-law rules of the state in which that court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In contract claims, New York courts apply "the laws of the state with the most significant contacts to the contract." *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999). This test allows a court to consider a broad range of significant contacts, including "the place of contracting, negotiation[,] and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 383 (2d Cir. 2006).

Scism's counts VI and VII breach of warranty claims are contractual in nature.[2] *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 733 (N.Y. 1995) (describing warranty claims as "contractual"). Plaintiff lives in New York and was impacted with TVT in this state.

---

[2] It is also possible that plaintiff's Count X unjust enrichment claim falls under this analysis. Moreover, as defendants note, it is an open question in this Circuit whether unjust enrichment should be subject to contract or tort choice of law provisions in the first place, adding an additional layer of confusion. *Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 457 n.3 (S.D.N.Y. 2015). In any event, the same reasons would compel applying New York law regardless of which choice of law test is relevant. Whether interests or contacts are considered, New York's loom larger than New Jersey's.

4

Comp. ¶¶ 1, 19.  Although defendants are New Jersey residents, this sole countervailing contract is insufficient to overpower New York's several strong contacts.  *Id.* ¶¶ 2-3.  Thus, New York law applies to plaintiff's warranty claims.

In considering a tort claim, however, New York courts apply an "interest analysis" test to determine which state's laws should be used.  *GlobalNet Financial.Com*, 449 F.3d at 384.  Therefore, "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict."  *Id.* (alterations in original) (citing *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 684 (N.Y. 1985)).

"Two separate inquiries are . . . required to determine the greater interest:  (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss."  *Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994) (internal citations omitted).  If the tort in question is one that regulates conduct, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013).

Under the greater interest test, New York law plainly applies to Scism's tort claims.  As an initial matter, plaintiff's tort claims are one and all aimed at regulating conduct, and thus the location where the tort was committed will carry great weight.  *In re Thelen*, 736 F.3d at 220.  Once again, plaintiff was implanted with TVT in New York, and by extension the tort she alleges occurred in this state. Comp. ¶ 19.  Furthermore, the residency interests between New York and New Jersey are equal, given that each state has one party as a resident.  *Id.* ¶¶ 1-3.  Thus, the location of the tort must control.

5

All told, New York has the most significant contacts with the alleged contract, and has the greatest interest in the torts plaintiff alleges. *GlobalNet Financial.Com*, 449 F.3d at 383-84. The Court will thus apply New York law to all of plaintiff's claims.

### III. DISCUSSION

"Applying New York law, there are four theories under which a plaintiff may pursue a recovery based upon a claim of products liability: (1) strict liability; (2) negligence; (3) express warranty[;] and (4) implied warranty." *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 888 (E.D.N.Y. 2018). Each theory requires the plaintiff to prove that: (1) the product was defective in design or manufacture; and (2) the product was the actual and proximate cause of the plaintiff's injury. *Id.*

Defendants have moved to dismiss the following counts of the complaint: (II) strict liability; (III) negligence; (IV) negligent misrepresentation; (V) negligent infliction of emotional distress; (VI) breach of an express warranty; (VII) breach of an implied warranty; (VIII) violation of New York's consumer protection laws; and (X) unjust enrichment. Those counts will be addressed in turn.[3]

#### A. STRICT LIABILITY.

Under New York law, "[a] manufacturer who places into the stream of commerce a defective product which causes injury may be held strictly liable." *McCarthy v. Olin Corp.*, 119 F.3d 148, 154 (2d Cir. 1997). A defective product comes in three categories: (1) design defects; (2) manufacturing defects; and (3) defective or inadequate warnings. *Id.* at 154-55.

"A defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably

---

[3] Additionally, however, defendants correctly note that "there is no independent cause of action for punitive damages." *Wholey v. Amgen, Inc.*, 86 N.Y.S.3d 16, 18 (N.Y. App. Div. 1st Dep't 2018). Plaintiff may continue to pursue punitive damages for any claims that survive, but she is advised that it does not constitute a discrete count of her complaint.

6

dangerous for its intended use[.]" *Oden*, 330 F. Supp. 3d at 888 (citing *Scarangella v. Thomas Built Buses, Inc.*, 717 N.E.2d 679, 681 (N.Y. 1999)). In other words, the product must be "one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." *Oden*, 330 F. Supp. 3d at 888 (citing *Scarangella*, 717 N.E.2d at 681).

By extension, to adequately plead a design defect, plaintiff must show: "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing [the p]laintiff's injury." *Oden*, 330 F. Supp. 3d at 888. In pleading the first element, a plaintiff must "identify a particular problem in the design" of the allegedly defective device to survive a motion to dismiss under Rule 12(b)(6). *Guariglia v. Procter & Gamble Co.*, 2018 WL 1335356, at *3 (E.D.N.Y. Mar. 14, 2018) (collecting cases). Similarly, a plaintiff "must plead facts alleging the existence of a feasible alternative design . . . ." *Id.* (internal citations and quotation marks omitted); *see Cowan v. Costco Wholesale Corp.*, 2017 WL 59080, at *2 (E.D.N.Y. Jan. 5, 2017).

Alternatively, to plead and prove a manufacturing flaw, "the plaintiff must show that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and that the defect . . . cause[d the] plaintiff's injury." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (citing *Caprara v. Chrysler Corp.*, 417 N.E.2d 545, 552-53 (N.Y. 1981) (Jasen, Jones, and Meyer, JJ., dissenting)). A manufacturing flaw differs from a design flaw in that the product as designed is sound, but the unit plaintiff encountered "deviates in quality and other performance standards from all . . . other identical units." *Colon*, 199 F. Supp. 2d at 85. By extension, of course, "a claim devoid of allegations that a

7

particular unit differed when compared to others in the same product line will be dismissed." *Oden*, 330 F. Supp. 3d at 890 (collecting cases).

The third path available to a plaintiff to recover under strict products liability is for "the manufacturer's failure to warn of the risks and dangers associated with the use of its product." *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 365 (2d Cir. 1997). The necessary elements of a failure to warn claim are: (1) the existence of the manufacturer's duty to warn; (2) against dangers resulting from foreseeable uses of its product of which it should have been aware; and (3) that failure to do so proximately caused plaintiff's injury. *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012). A manufacturer's duty to warn "generally extends to warning ultimate consumers of the dangers resulting from the foreseeable use of the product." *Urena*, 114 F.3d at 365.

Of course, a failure to warn cause of action "is appropriately dismissed if a plaintiff does not plead facts indicating how the provided warnings were inadequate," *Reed*, 839 F. Supp. 2d at 575. Moreover, under New York law, a manufacturer adequately carries its "duty to warn of a product's risks by providing information to the prescribing physician, not to the patient directly." *Oden*, 330 F. Supp. 3d at 891 (internal citations and quotation marks omitted).

Defendants argue that the second count of Scism's complaint fails to adequately plead any of the three theories of strict liability. For her part, plaintiff argues that she has met the requisite pleading standard in each of her claims to sufficiently put defendants on notice of what, precisely, she is alleging.

First, defendants are correct that Scism has failed to adequately plead the design defect theory of strict liability. Nowhere in the complaint does plaintiff identify what "particular problem" in the design caused her injury. *Guariglia*, 2018 WL 1335356, at *3. She alleges

8

what symptoms can arise from the defective mesh products, but simply referring to them as defective alone is not enough. Rather, plaintiff must plead how her mesh implant was defective, not simply whether it was. *Id.* (dismissing design defect claim because plaintiff failed to identify particular problem in the design). Her failure to do so is fatal to a strict liability defective design claim.

Second, defendants are again correct that Scism has failed to plausibly allege a manufacturing flaw warranting strict liability. There is no allegation in her complaint whatsoever that her particular TVT implant was in any way different from any other mesh implant. *See generally* Comp. This missing factual allegation is fatal, and plaintiff has therefore failed to plead a manufacturing flaw theory of strict liability. *Oden*, 330 F. Supp. 3d at 890-91 (collecting cases and dismissing manufacturing flaw strict liability case because there were no allegations that a particular unit differed from others).

Scism's strict liability claim also must be dismissed to the extent that it could present a failure to warn claim, albeit for a different reason. Plaintiff has alleged a separate count of the complaint exclusively under a theory of failure to warn. *Id.* ¶¶ 36-42. That claim notes that defendants "are strictly liable" to plaintiff for their "wrongful conduct." *Id.* ¶ 42. In other words, plaintiff's first count, which defendants do not oppose, squarely contemplates a strict liability failure to warn claim. Thus, to whatever extent plaintiff's strict liability claim could rely on a failure to warn, that claim is duplicative. Count II of the complaint must therefore be dismissed without prejudice.

### B. NEGLIGENCE.

Broadly speaking, New York treats products liability cases sounding in strict liability and negligence identically. *Oden*, 330 F. Supp. 3d at 887. The only real difference between the two is, of course, that in negligence claims "the plaintiff must also prove that the injury

caused by the defect could have been reasonably foreseen by the manufacturer." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 86 (2d Cir. 2006) (citing *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 403 N.E.2d 440, 443-44 (N.Y. 1980)).

Defendants argue that Scism's negligence claim is inadequately pleaded because she has only conclusively pled foreseeability. If the inquiry is limited to the language of the count itself, defendants are correct, but the complaint as a whole has sufficient factual matter to allow her complaint to proceed. Plaintiff alleges that defendants underreported and withheld injury rates from physicians and the FDA, despite the products' high failure rates. Comp. ¶¶ 25-28, 32. Assuming those allegations to be true, it is reasonably foreseeable that patients would be injured by receiving mesh implants they would not have received had the warnings been proper. Plaintiff has thus adequately pleaded that defendants negligently failed to warn doctors and the FDA and that injury was reasonably foreseeable as a result. Plaintiff's count III negligence claim therefore cannot be dismissed.[4]

### C. **NEGLIGENT MISREPRESENTATION.**

The elements for a negligent misrepresentation claim under New York law are: (1) defendant had a duty resulting from a special relationship to give correct information to plaintiff; (2) defendant made a false representation that it should have known was incorrect; (3) defendant understood that plaintiff wanted the information for a serious purpose; (4) plaintiff intended to rely on the information in taking action; and (5) plaintiff reasonably relied on that misrepresentation to her detriment. *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). "Participating in a business transaction does not, by itself, give

---

[4] That said, to the extent plaintiff claims defendants negligently injured her through either a design defect or a manufacturing flaw, those claims are inadequately pled for the same reasons necessitating dismissal of plaintiff's non-failure to warn strict liability claims.

rise to a special relationship for purposes of negligent misrepresentation." *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 516 (S.D.N.Y. 2018).

Instead, the relationship muse be "privity-like," fiduciary, or one in which a party either has "unique or specialized expertise" or is "in a special position of confidence and trust with the injured party." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011).

Additionally, under New York's learned intermediary doctrine, warnings for medical treatments "are intended for the physician, whose duty it is to balance the risks against the benefits of various drugs and treatments and to prescribe them and supervise their effects[.]" *Amos v. Biogen Idec Inc.*, 249 F. Supp. 3d 690, 697 (W.D.N.Y. 2017). As a result, "the manufacturer's duty to caution against a [treatment]'s side effects is fulfilled by giving adequate warning through the prescribing physician, not directly to the patient." *Id.*

However, if the treating physician relied on defendant's misrepresentation in prescribing the treatment, a claim of negligent misrepresentation may proceed regardless of whether the learned intermediary doctrine applies. *See Amos*, 249 F. Supp. 3d at 697 (dismissing negligent misrepresentation claim because defendants' warnings to doctor were adequate as a matter of law); *Prohaska v. Sofamor, S.N.C.*, 138 F. Supp. 2d 422, 447-48 (W.D.N.Y. 2001) (dismissing negligent misrepresentation claim on summary judgment because plaintiff failed to prove reliance by physician).

Defendants argue that Scism's negligent misrepresentation claims fail for two reasons: (1) New York's learned intermediary doctrine precludes it; and (2) plaintiff fails to plead reliance. Defendants' first point is swallowed by its second. It is true that the learned intermediary doctrine provides an impediment to plaintiff's negligent misrepresentation claim, because defendants' duty to disclose would have been carried had defendants properly informed plaintiff's treating physician of the risks of harm. *Amos*, 249 F. Supp. 3d at 697.

11

However, plaintiff's negligent misrepresentation claim can still be asserted if she plausibly alleged that her physician relied on an inadequate warning from a pharmaceutical company in prescribing TVT to plaintiff. *Id.*

As defendants correctly note, however, Scism does not present a single allegation of reliance. *See generally* Comp. Thus, not only has plaintiff failed to plead an essential element of a negligent misrepresentation claim, but the learned intermediary doctrine precludes recovery because she has not alleged that her doctor relied on any misrepresentation attributable to defendants. *See, e.g.*, *Hydro Invs., Inc.*, 227 F.3d at 21; *Prohaska*, 138 F. Supp. 2d at 447-48. Plaintiff's count IV negligent misrepresentation claim must therefore be dismissed without prejudice.

### D. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**

To establish a claim for negligent infliction of emotional distress, a plaintiff must establish a "breach of a duty owed to [her] which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for . . . her own safety." *Lee v. McCue*, 410 F. Supp. 2d 221, 227 (S.D.N.Y. 2006). "[T]he defendant's conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Banker v. Cty. of Livingston*, 782 F. Supp. 2d 39, 50 (W.D.N.Y. 2011) (citing *Burger v. Singh*, 915 N.Y.S.2d 113, 115 (App. Div. 2d Dep't 2010)). Whether conduct is sufficiently outrageous is determinable as a matter of law. *Rizzo v. Edison, Inc.*, 419 F. Supp. 2d 338, 349 (W.D.N.Y. 2005), *reconsideration denied by* 2005 WL 1377904 (W.D.N.Y. June 8, 2005), *aff'd*, 172 F. App'x 391 (2d Cir. 2006) (summary order).

However, a claim of negligent infliction of emotional distress cannot be asserted if it is "essentially duplicative of tort . . . causes of action." *Virgil v. Darlak*, 2013 WL 4015368, at

12

*10 (W.D.N.Y. Aug. 6, 2013) (citing *Djangmah v. Falcione*, 2013 WL 208914, at *9 (S.D.N.Y. Jan. 18, 2013) *report & recommendation adopted by* 2013 WL 1195261 (S.D.N.Y. Mar. 25, 2013). After all, a negligent infliction of emotional distress claim is ultimately an "acknowledgement by the courts of the need to provide relief in those circumstances where traditional theories of recovery do not." *Lee*, 410 F. Supp. 2d at 226-27 (emphasis omitted).

Scism's negligent infliction of emotional distress claim relies on allegations that defendants "carelessly and negligently manufactured, designed, developed, tested, labeled, marketed[,] and sold" the pelvic mesh products. Comp. ¶ 58. As a result of this alleged misconduct, plaintiff claims that she suffered emotional distress, as well as physical and economic injuries. *Id.* ¶ 59. That familiar refrain aligns closely with plaintiff's general negligence claim, and it therefore cannot be said that a traditional theory of recovery does not reach these allegations. *Lee*, 410 F. Supp. 2d at 226-27. By extension, plaintiff's count V negligent infliction of emotional distress claim is duplicative and must be dismissed without prejudice. *Virgil*, 2013 WL 4015368, at *10.

### E. **BREACH OF WARRANTY.**

Any "affirmation of fact or promise made by [a] seller to [a] buyer which relates to the goods [contemplated in a transaction] and becomes part of the basis of [a] bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y.U.C.C. § 2-313(1)(a). "A successful claim of a breach of express warranty requires proof that an express warranty existed, was breached, and that plaintiff had relied on that warranty." *Reed*, 839 F. Supp. 2d at 578. "[A] cause of action for breach of a contract of sale must be commenced within four years after it accrues." *Heller v. U.S. Suzuki Motor Corp.*, 477 N.E.2d 434, 435 (N.Y. 1985). "The action accrues when the breach occurs and, in the absence of a

13

warranty explicitly extending to future performance, a breach occurs when tender of delivery is made." *Id.*

Alternatively, a plaintiff can pursue a claim for a breach of an implied warranty. To do so, she must prove: "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect [wa]s the proximate cause of the injury." *Cavanagh v. Ford Motor Co.*, 2014 WL 2048571, at *5 (E.D.N.Y. May 19, 2014). The proof for warranty liability is "essentially the same" as proof under strict liability. *Id.* (citing *Dalton v. Stedman Mach. Co.*, 2008 WL 351676, at *7 (N.D.N.Y. Feb. 7, 2008)).

Much as with an express warranty, a claim for breach of implied warranty must be filed within four years of the product's delivery. *Vanata v. Delta Int'l Mach. Corp.*, 702 N.Y.S.2d 293, 295 (App. Div. 1st Dep't 2000). The four-year statute of limitations applies even where the plaintiff is not in privity with the manufacturer. *Id.*

Scism does not dispute defendants' argument that her claims are time-barred, and the Court will not belabor the point. It is enough to say that for both counts VI and VII, the statute of limitations began to run on the date of plaintiff's surgery, July 2, 2014, and her time ran out on July 2, 2018. Comp. ¶ 19. Plaintiff only filed this complaint on December 12, 2019. *See generally id.* Counts VI and VII are thus time-barred and must be dismissed without prejudice.

### F. **BREACH OF CONSUMER PROTECTION LAWS.**

New York's consumer protection laws prohibit "[d]eceptive acts or practices," as well as "[f]alse advertising," in the conduct of any business, trade, or commerce, or in furnishing any service in the state. N.Y. GEN. BUS. LAW §§ 349(a), 350. To establish a prima facie case under either N.Y. GEN. BUS. LAW §§ 349(a) or 350, a plaintiff must allege: that "a defendant

14

has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered an injury as a result of the allegedly deceptive act or practice." *Tears*, 334 F. Supp. 3d at 516. A defendant's conduct is "materially misleading" only if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* A pleading is insufficient if it does not include facts demonstrating "a causal connection between some injury to plaintiffs and some misrepresentation made by defendants." *Id.*

A defendant's conduct is "consumer-oriented" even if it does not involve a pattern of deceptive conduct. *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010). Instead, a plaintiff must "demonstrate that the acts or practices have a broader impact on consumers at large." *Id.* Courts in this Circuit interpreting New York law have held that a medical warning is "not an act directed at consumers," but is instead directed at the prescribing physician. *Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 173-74 (W.D.N.Y. 2014).

Scism's New York consumer protection claims allege that she purchased the mesh for personal use, and would not have done so had she been adequately warned as to its dangers. Comp. ¶¶ 84-85. Essentially, then, plaintiff alleges that defendants' misrepresentations as to the safety of their products and false advertising practices constituted materially misleading consumer-oriented conduct. However, as defendants correctly note, a medical warning is not directed at consumers, but at physicians. *Amos*, 28 F. Supp. 3d at 173-74.

To be sure, misleading physicians was a necessary step toward reaching people who would purchase defendants' products. But even then, those purchasers are not truly consumers. The physician ultimately makes the call as to which products he or she uses, for a number of reasons that are not entirely commercial in nature. Scism did not make those choices, and thus she is not a consumer in the sense that New York contemplates. Plaintiff

15

has therefore failed to plead any consumer-oriented conduct, and her count VIII claim under New York's consumer protection laws must be dismissed without prejudice.

### G. UNJUST ENRICHMENT.

A plaintiff must plead three elements to establish an unjust enrichment claim: (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) that equity and good conscience require the defendant to make restitution. *Goldemberg v. Johnson & Johnson Cons. Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014). Unjust enrichment is available "only in unusual situations when, though the defendant has not . . . committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). In other words, "[t]ypical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.* By extension, where an unjust enrichment claim "simply duplicates, or replaces, a conventional . . . tort claim" the claim is normally unavailable. *Id.*

Scism's unjust enrichment claim alleges that she paid defendants her own money for a faulty product. Comp. ¶¶ 109-12. That claim is recoverable under the various theories of products liability that plaintiff has already alleged. A claim of unjust enrichment is therefore duplicative, and, by extension, unavailable, and count X of the complaint must be dismissed without prejudice. *See, e.g.*, *Corsello*, 967 N.E.2d at 1185.

### IV. CONCLUSION

Scism has alleged a host of claims against defendants to correct the wrong that she alleges they caused her when she was implanted with their pelvic mesh products. Her claims of: (I) strict liability for a failure to warn; (II) negligence; and (IX) gross negligence will proceed. The remainder of her claims, however, do not fare so well. Although plaintiff has

16

requested—in passing—leave to amend her complaint in her opposition to defendants' motion, that request cannot be granted from such an informal request. She may, however, make a formal motion to amend her complaint under Rule 15. Should she do so, she is cautioned that she must comply with Local Rule 7.1(a)(1)(4). Among that Local Rule's requirements are that plaintiff must provide with her motion a complete proposed amended complaint.

Therefore, it is

ORDERED THAT

1. Defendants' partial motion to dismiss under Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART;

2. The following counts of plaintiff's complaint are dismissed without prejudice: (II) strict liability; (IV) negligent misrepresentation; (V) negligent infliction of emotional distress; (VI) breach of express warranty; (VII) breach of implied warranty; (VIII) violation of New York's consumer protection laws; and (X) unjust enrichment;

3. Plaintiff's claims of: (I) strict liability for failure to warn; (III) negligence; and (IX) gross negligence, remain valid; and

4. Defendants are directed to answer counts (I), (III) and (IX) of plaintiff's complaint no later than Monday, March 30, 2020.

IT IS SO ORDERED.

Dated: March 16, 2020
Utica, New York.

David N. Hurd
U.S. District Judge